Benjamin Shapiro and Gertrude Shapiro v. Commissioner.
Shapiro v. Commissioner
Docket No. 86461.
United States Tax Court
T.C. Memo 1962-213; 1962 Tax Ct. Memo LEXIS 96; 21 T.C.M. (CCH) 1143; T.C.M. (RIA) 62213; September 10, 1962
Jerome Kamerman, Esq., 11 West 42nd St., New York, N. Y., for the petitioners. Joseph M. Touhill, Esq., and Agatha J. LaMalva, Esq., * for the respondent. MULRONEY Memorandum Finding of Fact and Opinion MULRONEY, Judge: The respondent determined a deficiency in petitioners' income tax for the year 1956 in the amount of $23,538.63. By an amendment to answer and stipulation it is agreed if respondent prevails on the issue presented, the correct deficiency should be $24,964.93. The issue is whether petitioners, in the year 1956, are entitled to deduct $31,795.06 *97 as interest payments within the meaning of section 163(a), Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated and they are found accordingly. Petitioners are husband and wife residing in New York, New York, and they filed their joint income tax return for 1956 with the district director of internal revenue for the Thirteenth District of New York. Said return showed taxable income of $120,316.50. Petitioner Benjamin Shapiro (hereinafter referred to as petitioner) during the year in question was in the dress manufacturing business and also engaged in real estate investments. Petitioner's broker was the Ira Haupt & Co. and sometime in December of 1956 Federman, a broker in that firm who handled petitioner's affairs, suggested to him that he purchase $450,000 United States Bonds and borrow the funds to finance the purchase. It was represented to petitioner that if he purchased these bonds in a "package transaction" involving borrowing money to finance the purchase and deducting interest, a gain after tax would be produced in his taxable year 1956. Petitioner submitted the suggestion to his accountant, Kamerman, who also *98 identified himself as one of the partners in the Ira Haupt & Co. brokerage firm. The accountant advised him to enter the transaction and petitioner followed his advice. Thereafter petitioner entered into the suggested bond purchase transaction with the broker making all of the arrangements. There were really three bond purchase transactions entered into on December 18, 19, and 21, 1956. As will presently appear the transactions involve purported borrowings by petitioner from the Millridge Corporation (hereinafter called Millridge) and D. H. Blair & Co., Inc. (hereinafter called Blair). Robert W. Miller was in 1956 president of both corporations. Millridge is a finance company and Blair was engaged in the money brokerage business during 1956. Federman was a stockholder in Millridge. These two corporations operated out of the same New York office, the clerical personnel being used interchangeably by both corporations. Petitioner did not know Robert W. Miller and at no time did he have any personal contact with Millridge or Blair. All transactions between petitioner and the said corporations were arranged and handled by Federman. The steps taken with respect to the December 18, 1956, transaction *99 were as follows: On December 18, 1956, Joseph Faroll & Co., stockbrokers, bought on behalf of, and on the direction of, Millridge, $200,000 face amount United States of America Treasury notes, 1 1/2 percent, due October 1, 1959, for the cost of $189,799.11 including broker's commission and accrued interest. Millridge instructed Joseph Faroll & Co. by letter to deliver the aforesaid notes against payment to the Irving Trust Company, which instructions Joseph Faroll & Co. fulfilled on the same day crediting Millridge's brokerage account with it for $189,799.11. Millridge, by letter dated December 18, 1956, instructed the Irving Trust Company to receive the aforesaid bonds and remit payment, which instructions the Irving Trust Company fulfilled on the same date debiting Millridge's account with it for $189,804.11 which included a $5 commission. On the same day Millridge instructed the Irving Trust Company by letter to deliver the aforesaid notes to Ira Haupt & Co. (petitioner's broker) against payment, which instructions the Irving Trust Company fulfilled on the same date crediting Millridge's account with it for $189,142.86. Millridge instructed Ira Haupt & Co., by letter dated December 18, 1956, to *100 receive from the Irving Trust Company the aforesaid notes against remittance, which instructions Ira Haupt & Co. fulfilled on the same date debiting Millridge's brokerage account with it for $189,142.86. Ira Haupt & Co. bought the aforesaid notes as principal from Millridge. On the same day, December 18, 1956, petitioner purportedly purchased from Ira Haupt & Co. the aforesaid notes through his broker Ira Haupt & Co. for the net amount of $189,205.36. On the same day petitioner signed a promissory note to Millridge for $189,205.36 and pledged the $200,000 face amount Treasury Notes as security. The note was due October 1, 1959, the maturity date of the Treasury Notes, and it recites "[interest] in the amount of $12,744.32 has been prepaid." Petitioner, by letter dated December 18, 1956, instructed Ira Haupt & Co. to deliver the aforesaid notes to the Irving Trust Company against payment, for the account of Millridge, which instructions Ira Haupt & Co. fulfilled on the same day crediting petitioner's brokerage account with it for $189,205.36. Petitioner authorized, by letter dated December 18, 1956, the Irving Trust Company to receive from Ira Haupt & Co. for the account of Millridge, *101 the aforesaid notes and to remit to them $189,205.36. Millridge, by letter dated December 18, 1956, instructed the Irving Trust Company to make payment of $189,205.36 to Ira Haupt & Co. against receipt of the aforesaid notes for the account of petitioner, which instructions the Irving Trust Company fulfilled, debiting the account of Millridge with it for $189,205.36 plus a commission of $5, the principal amount of petitioner's purported note to Millridge. The remittance which the Irving Trust Company made on the authority of petitioner's letter was from Millridge's account with it and constituted the payment by Millridge for the purchase of the notes on behalf of petitioner by use of the $189,205.36 which in turn constituted the principal amount of the purported loan to petitioner by Millridge. Millridge, by letter dated December 18, 1956, to the Irving Trust Company, directed the delivery of the aforesaid notes to Joseph Faroll & Co. against payment of $189,674.11, with which instructions the Irving Trust Company complied on the same date, crediting Millridge's account with it. On the same date Joseph Faroll & Co. sold on behalf of, and on the direction of, Millridge the aforesaid *102 notes on the market for the net amount of $189,674.11, including commission and accrued interest. The December 19, 1956 transaction involving $50,000 face amount of Treasury Notes, followed in general the same steps outlined above with respect to the December 18, 1956 transaction. Here petitioner's note to Millridge was for $47,303.40, the amount he had purportedly paid for the Treasury Notes which had been procured as before by Millridge and turned over to Ira Haupt & Co., and were pledged in the note. This note recited "[interest] in the amount of $3,186.45 has been prepaid." The December 21, 1956 transaction involving $200,000 face amount of Treasury Notes followed in general the same steps as the other two. Here petitioner's note to Millridge was for $189,261.33, the amount he had purportedly paid for the Treasury Notes which had been procured as before by Millridge and turned over to Ira Haupt & Co. and were pledged in the note. This note recited "[interest] in the amount of $12,680.01 has been prepaid." During this period petitioner signed three notes to Blair which were in form exactly like the three notes to Millridge with the same maturity date. The first was for *103 the principal sum of $11,437.50 and it pledged the same Treasury Notes as were pledged in the December 18, 1956 note to Millridge. This note recited "[interest] in the amount of $1,432.55 has been prepaid." The second note to Blair was for the principal sum of $2,859.37 and it pledged the same Treasury Notes as were pledged in the December 19, 1956 note to Millridge. It recites "[interest] of $328.31 has been prepaid." The third note to Blair was in the sum of $11,406.25 and it pledged the same Treasury Notes as were pledged in the December 21, 1956 note to Millridge. It recites "[interest] in the amount of $1,422.92 has been prepaid." The amount of principal on each of the above notes to Blair was received by Blair from Millridge and recorded in an exchange account and turned over to petitioner in the said principal sums totaling $25,703.12. On his 1956 income tax return petitioner took as an interest deduction the total of the sums recited as prepaid interest in the three notes to Millridge and the three notes to Blair, or the total sum of $31,795.06. Respondent disallowed the deduction as not being "allowable under any of the sections of the Internal Revenue Code." [1] *104 Petitioner did not in fact purchase any United States Treasury Notes in December of 1956 and did not in fact borrow any money from Millridge or Blair and did not pay any interest on indebtedness to Millridge or Blair. Opinion The facts in this case match the facts in Eli D. Goodstein, 30 T.C. 1178, affirmed, 267 F. 2d 127, and Perry A. Nichols, 37 T.C. 772. In the cited cases we held transactions identical in all essential respects to the transactions here involved were shams and lacking in substance. It is perfectly obvious that petitioner's broker and accountant guided petitioner and entities they knew they could use, through a one-day series of maneuvers all designed to manufacture an interest deduction for petitioner (who was reporting income in the 80 plus percent bracket) without petitioner really borrowing any money at all. By bookkeeping entries, manipulations, and ordinary commercial documentation, it was merely made to appear that petitioner bought United States Treasury *105 Notes from or through his broker and financed the purchase with loans from Millridge and Blair on which he prepaid interest in 1956. The whole series of transactions lacked substance. Indeed there is really no convincing evidence that petitioner ever paid any interest. Petitioner testified he received by way of credit or payment the full amounts of the principal of all notes. He said the money received from the Blair notes was deposited by him in his bank account. His counsel asked him if he had paid the amounts recited as prepaid interest in the notes. He merely said he had. There were no cancelled checks showing such payments or any other corroborating evidence to show interest payments. Even if there were cancelled checks of purported interest payments the record would indicate Millridge itself was the primary source of funds used by petitioner to make such payments. Without further discussion we hold the case is ruled by the cited cases and respondent was right in disallowing the interest deduction. The only distinction which petitioner trys to make between this case and the cited cases is that in the cited cases the taxpayer used purported lending corporations that had neither *106 money nor credit to loan. The distinction, if it exists, is a factual immateriality and besides the record here does not show Millridge was in a position to be making $425,000 loans. All that we learn from the record is that it had about $151,000 in the bank on December 31, 1956, and that it had a net worth of about $240,000 as of April 1957. It is stipulated that if petitioner is not entitled to the interest deduction in 1956 in the amount of $31,795.06 "that the amount of deficiency which is due and owing from petitioners is $24,964.93." Decision will be entered for the respondent. Footnotes
*. Additional counsel for the respondent, Agatha J. LaMalva, Esq., added by an official order of the Tax Court dated September 24, 1962, and signed by Judge Mulroney.↩
1. Actually respondent's notice disallowed $30,034.19 but by an amendment alleged the correct amount and petitioner stipulated and agreed to the correction.↩